Beadle, Appellant, *v.* Friel.

Argued January 21, 1936.   Before KEPHART, C. J., MAXEY, DREW, LINN and BARNES, JJ.

*Robert P. Shick,* for appellant.

*William T. Connor,* with him *John R. K. Scott,* for appellee.

OPINION BY MR. JUSTICE MAXEY, March 23, 1936:

Plaintiff brought suit for damages against the defendant, the cause of action arising out of the following facts: On September 15, 1927, the defendant leased to plaintiff a farm in Maryland for one year from the 1st day of March, 1928. Plaintiff took possession at once, and began tilling the soil and securing live stock. On July 16, 1928, defendant informed the plaintiff that he had sold the premises and would like to have possession fourteen days later. Plaintiff agreed to surrender the premises provided he was paid $1,000 for his growing crops, as provided in the lease (in the event of the farm being sold before the lease terminated). Defendant refused to pay that amount and offered plaintiff $300. This offer was refused. On or about July 20, 1928, defendant introduced one Bidgood to the plaintiff as the purchaser of the farm, and plaintiff agreed to sell to Bidgood part of the household furniture. Defendant, it is alleged, "intervened at that point and prevented the sale of the furniture and likewise told the plaintiff that he must first give up possession of the premises and then bargain with defendant as to any payment for the growing crops." Plaintiff refused to deliver possession of the premises until he was paid in full for the furniture by Bidgood and paid $1,000 by defendant for the growing crops.

It is alleged further that "the defendant entered upon a course of conduct toward the plaintiff that was malicious, oppressive and utterly regardless of plaintiff's rights, all to the end of accomplishing his purpose and

securing the removal of the plaintiff from the premises without first paying to the plaintiff the $1,000 for his crops, as called for by the lease, and that on or about August 5, 1928, defendant caused to be levied a distraint upon all the furniture and personal property of the plaintiff upon the said farm for the rent claimed by him." Plaintiff alleges that there was no rent due by him to the defendant until the first of September, 1928. He avers that the defendant caused further proceedings to be had, "a sale was advertised in a broadcast way" to take place on August 16, 1928, or thereabouts. On or about August 20, 1928, at the alleged instigation of defendant, a deputy sheriff came to the farm and placed in possession of the premises two of his employees, described in the plaintiff's statement and offer of proof, as "two 'strong-arm' men." Plaintiff testified that the deputy sheriff "read a paper that he had along and put the two men in possession of the property, told me to get out." The deputy sheriff gave plaintiff no copy of the paper. The paper was not identified in any way, nor was it or a copy of it put in evidence, nor was the sheriff or deputy sheriff called as a witness. The deputy sheriff notified plaintiff to vacate but the latter did not do so until August 27, 1928.

Plaintiff claims that because of the levy for rent and the sale ordered of the property, he was compelled to protect the rights of his creditors by filing a petition in bankruptcy, and that he was forced to yield possession without securing any of his personal property or any of the money due him for his way going crops.

After trial, the jury, by direction of the court, rendered a verdict for defendant. Plaintiff filed a motion for a new trial.

Whether this action be regarded (as appellant's counsel regards it) as an action for malicious abuse of process, or as the court below regarded it, as a suit for malicious use of process, it was incumbent upon the plaintiff to prove the issuance and service of legal process. The

record shows that at the trial plaintiff's counsel stated: "I cannot show by the records in any court that any distress warrant was issued . . . out of any judicial office, magistrate or otherwise." When challenged to "prove the landlord's levy," plaintiff's counsel answered: "The formal proof I have not."

The inadequacy of plaintiff's proof is indicated by his counsel's trial offers, as follows: "I can prove that he [plaintiff] had delivered to him the bill of sale and the papers which announced the levy for rent. . . . Then I propose to show that after making a levy for the rent, which was not due, the defendant, through his attorney, James F. Evans, of Elkton, Maryland, had a deputy sheriff go to the farm where the plaintiff was and there left two 'strong-arm' men, who notified the plaintiff to get off and threw his household goods out on the road, and that the plaintiff, under the compulsion of these men, left there by the deputy sheriff, yielded possession and got off of the premises." This was objected to by defendant's counsel, but he added: "If there is any offer to prove here by material and relevant testimony that the defendant ordered the sheriff or two strong-arm men to go there and dispossess this plaintiff, I have no objection to that."

Counsel for plaintiff then stated that he had such proof "in the record of the other case heard by your Honor." This record was made in a case tried on May 9, 1932, between the same parties. He read into the record of the instant case certain testimony from that case, the pertinent parts of which are the following (the defendant being on the stand under cross-examination): "Q. Now, in August, you instructed the sheriff to throw Mr. Beadle off this property, didn't you? A. My attorney in Elkton is here. Q. You had the sheriff eject Mr. Beedle from the property? A. Mr. Evans attended to that, under his advice. Q. At your request? A. Well, of course, I asked Mr. Evans for his advice and that was his advice. . . . Q. Mr. Evans then is responsible for

anything which was done by the sheriff after this warrant was sworn out? A. I never saw the sheriff. Q. What was done at your request after this warrant had been served, in respect to the property? A. I don't know, I was guided, as I have told you once before, by the advice of my attorney, Mr. Evans here and he acted according to what he believed and knew was the law." The court rejected this as proof. Plaintiff's case fell because of failure to prove the issuance and service of process. The court below aptly stated: "The best that can be said for plaintiff's case in this respect is that there is a threat or attempt to make a malicious use of process."

The court below, in its opinion refusing a new trial, said: "It would seem to be clear without discussion that in an action for an illegal distress, a distress must be proved, and by competent testimony. Here no such proof was forthcoming and no explanation made of the failure to produce such evidence."

In Garland v. Wilson, 289 Pa. 272, 137 A. 266, which was an action for trespass for malicious use of legal process, the court below gave judgment for defendant on questions of law. Plaintiff appealed. It appears that in that case the alleged malicious use of legal process was based on the filing of a bill in equity. This court said: "The claim on its face appears to be one for malicious use of legal process; treating it as such it could not be maintained as the equity suit on which it was founded is still pending: 38 C. J. 466, 467. . . . The action lies only when there is an unlawful interference with a person or property, *under color of the process* [italics supplied]. 'If the person be not arrested nor his property seized, it is unimportant how futile and unfounded the action may be' ": (Citing Mayer v. Walter, 64 Pa. 283, and other cases).

This court in Norcross v. Otis Bros. & Co., 152 Pa. 481, 25 A. 575, said: ". . . that an action will lie for a malicious abuse of civil process, yet there must be a falsehood

in the demand, want of probable cause, malice in the defendant, and an actual arrest of the person, or a seizure of property."

In Mayer v. Walter, 64 Pa. 283, this court said, in an opinion by Mr. Justice SHARSWOOD: "There is a distinction between a malicious use and a malicious abuse of legal process. An abuse is where the party employs it for some unlawful object, not the purpose which it is intended by the law to effect; in other words, a perversion of it. Thus, if a man is arrested, or his goods seized in order to extort money from him, even though it be to pay a just claim other than that in suit, or to compel him to give up possession of a deed or other thing of value, not the legal object of the process, it is settled that in an action for such malicious abuse it is not necessary to prove that the action in which the process issued had been determined, or to aver that it was sued out without reasonable or probable cause: Grainer v. Hill, 4 Bing. N. C. 212. . . . On the other hand, legal process, civil or criminal, may be maliciously used so as to give rise to a cause of action where no object is contemplated to be gained by it other than its proper effect and execution. As every man has a legal power to prosecute his claims in a court of law and justice, no matter by what motives of malice he may be actuated in doing so, it is necessary in this class of cases to aver and prove that he has acted not only maliciously, but without reasonable or probable cause. *It is clearly settled also, that the proceeding must be determined finally before any action lies for the injury* [italics supplied]; because, as it is said in Arundell v. Tregono, Yelv. 117, the plaintiff will clear himself too soon, viz., before the fact tried, which will be inconvenient; besides, the two determinations might be contrary and inconsistent. The case before us evidently was that of a malicious use of legal process. All the analogies of an action for a malicious arrest or seizure of goods under an execution fairly belong to it: Beach v. Wheeler, 12 Harris 212."

In the present action, which has all the aspects of a suit for the malicious use of legal process, there was no proof that such process had been issued and no proof that the proceeding giving rise to such process had terminated in plaintiff's favor. Even if this suit was one for the abuse of legal process, there is no proof of the existence of the process alleged to have been maliciously abused. For all that appears in the record, the deputy sheriff and the "two 'strong-arm' men" who evicted him may have been acting without color of legal authority. The maximum of plaintiff's proof was that there was an appearance of the malicious use of legal process against him. Such proof is inadequate to sustain the cause of action pleaded.

The judgment is affirmed.