389 A.2d 607

**Theodore A. GARCIA, M. D., and Lydia Garcia, his wife, Appellants,**

v.

**WALL & OCHS, INC.**

Superior Court of Pennsylvania.

Argued Dec. 12, 1977.

Decided July 12, 1978.

---

William J. Brennan, King of Prussia, with him Butera & Detwiler, King of Prussia, for appellants.

Jane B. Porcelan, Philadelphia, with her Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN· der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Pennsylvania has long followed the "English rule" which requires a plaintiff to prove either an arrest of the person or seizure of property[1] in order to state a cause of action for malicious use of civil process.[2]  In this appeal, appellants ask us to reconsider our adherence to this rule.  We decline to do so[3] and, therefore, affirm the lower court's order sustaining appellee's demurrer.

In the instant complaint, filed on June 25, 1976, appellant-Dr. Garcia averred that he is an opthalmologist in King of Prussia, Montgomery County;  that in October, 1974, appellee, a corporation engaged in the dispensing and sale of eyeglasses, commenced an action in trespass in the Montgomery County Court of Common Pleas charging appellant with trade libel, defamation, and interference with business relations;  that during discovery, appellees voluntarily discontinued the action;  and that the action was commenced maliciously and without probable cause.  The complaint averred that as a result of the original trespass action,

1.  According to the Oregon Supreme Court, Pennsylvania is one of seventeen states which retains the English rule.  Twenty-three states do not require a seizure of person or property.  The remaining ten jurisdictions have not decided the issue.  *See O'Toole v. Franklin,* 279 Or. 513, 569 P.2d 561 (1977) and cases cited therein.  The English rule has been criticized by Prosser, Torts § 120 (4th ed. 1971) and abandoned by the Restatement (Second) of Torts § 674 (1965).

2.  This cause of action must be distinguished from two other torts, malicious abuse of process and malicious prosecution.  Malicious abuse of process concerns an improper use of civil process *after* an action has been instituted.  Malicious use of process, in contrast, focuses on the wrongful *initiation* of an action.  Malicious prosecution focuses on the same time period as instant action; however, it involves the wrongful use of criminal process.  In an attempt to avoid the confusing terminology, the instant action has been referred to as "wrongful civil proceedings."  See Prosser, Torts § 120–121 (4th ed., 1971); Restatement (Second) of Torts § 674 (1965).

3.  Because of our discussion of this element, it is unnecessary for us to consider the other elements of the cause of action as formulated by Pennsylvania case law: that the former proceedings terminated favorably to the plaintiff, that the defendant instituted the previous action without probable cause, and that the defendant acted with malice.  *See Publix Drug Co. v. Breyer Ice Cream Co.,* 347 Pa. 346, 32 A.2d 413 (1943).

appellant-Dr. Garcia suffered damage to his reputation, severe mental anguish and anxiety, loss of consortium and companionship with his wife, and was compelled to engage legal counsel to defend against appellee's claims. In his prayer for relief, he averred that he was entitled to $3574.50 in counsel fees and costs expended for his defense to appellee's trespass action, $10,000 to compensate for counsel fees and costs incurred in bringing the instant action, $10,000 in compensatory damages for the loss of companionship and consortium with his wife, and $10,000 in punitive damages. In count III of the complaint, appellant-Mrs. Garcia incorporated by reference the foregoing factual averments and prayed for $10,000 in compensatory damages for loss of companionship and consortium with her husband, and $10,-000 in punitive damages.

In its preliminary objections, appellee answered that appellants failed to state a cause of action for malicious use of process because they did not aver any seizure of person or property. Appellee asserted that an adverse effect on one's reputation, expenditures for legal fees incurred, and loss of consortium are not the kind of damages properly recoverable in an action for malicious use of process. In sustaining appellee's preliminary objections, the lower court stated that it was unwilling to alter the seizure requirement to allow appellants' complaint to state a cause of action for malicious use of process. This appeal followed.

It has been the law in Pennsylvania since our Supreme Court decided *Kramer v. Stock,* 10 Watts 115 (1840), that in order to sustain an action for malicious use of process, it is necessary to demonstrate "that the party . . . committed an illegal act, from which positive or implied damage ensues." [4] *supra* at 117. In *Mayer v. Walter,* 64 Pa. 283, 289 (1870), Chief Justice SHARSWOOD held, in an often quoted passage: "Now, undoubtedly, a mere suit, however malicious

---

4. The rule adopted in Pennsylvania has its origins in the English Statute of Marlbridge, 52 Hen III (1259) which awarded a prevailing defendant costs and damages against a plaintiff who wrongfully brought the initial action. Subsequent English cases adopted the requirement of an arrest of the person or a seizure of property.

or unfounded, cannot be made the ground of an action for damages. If the person be not arrested or his property seized, it is unimportant how futile and unfounded the action may be. . . . " Subsequent cases have similarly confined the action. In *Muldoon v. Rickey,* 103 Pa. 110, 113 (1883), our Supreme Court held that the damage which results from a temporary cloud on title to realty "is not more direct than that resulting from the expenses, loss of time, and often loss of credits, arising from the ordinary forms of legal controversy. All are troublesome, expensive, and often ruinous, and if for such damage the action of case could be maintained, there would be no end of litigation, for the conclusion of one suit would be but the beginning of another. It has, therefore, been wisely determined that for the prosecution of a civil suit, however unfounded, where there has been no interference with either the person or property of the defendant, no action will lie." In *Norcross v. Otis Bros. & Co.,* 152 Pa. 481, 25 A. 575 (1893), the Supreme Court reiterated the policy behind the requirement of an actual arrest of the person or a seizure of property: "If the law were not so, there would be no end of litigation. If the plaintiff, in an action of this kind, should fail to recover, the defendant, in turn, would bring a suit against him on the ground that the former suit was malicious; and, so long as there was no recovery for the plaintiff, the parties could keep on suing each other until the end of time." supra at 487, 25 A. 576.

In *Publix Drug Co. v. Breyer Ice Cream Co.,* 347 Pa. 346, 32 A.2d 413 (1943), appellant argued that appellee maliciously and without probable cause supervised the entry of two judgments of confession against appellant. A jury returned a verdict of $12,000 and the court granted a judgment n. o. v. in favor of appellee. The Supreme Court affirmed:

"It was essential in this case that plaintiff should show that the judgments were entered with malice, without probable cause to believe that the defendant could succeed, and that the original actions finally ended in failure. . . .

"There is here, however, a controlling bar to recovery. We have consistently held in this state that in an action for malicious use of legal process the action will not lie if there be no interference with the plaintiff's person or his property. Here the defendant stopped with the entry of the judgments and did not take any action against the plaintiff or its property. It will be noted that there is no evidence that the plaintiff had any real estate on which the judgments were a lien." *See also Beadle v. Friel,* 320 Pa. 560, 183 A. 761 (1936); *Eberly v. Rupp,* 90 Pa. 259 (1879); *King v. Bernstein,* 199 Pa.Super. 180, 184 A.2d 510 (1962).

The most recent statement by a Pennsylvania appellate court on the seizure requirement is found in *Roberts v. Gibson,* 214 Pa.Super. 220, 251 A.2d 799 (1969), in which appellant asserted that allegations in appellee's original complaint interfered with the good will of his business. He claimed that this interference caused him embarrassment and loss of prestige, and that he had to neglect his business to defend against the charges. In dicta, our Court said " . . . to date in Pennsylvania no recovery has been allowed for malicious use of process unless there was some interference with the plaintiff's person or property in the earlier litigation. See *Publix Drug Co. v. Breyer Ice Cream Co.,* 347 Pa. 346, 32 A.2d 413 (1943); *King v. Bernstein,* 199 Pa.Super. 180, 184 A.2d 510 (1962) . . .. Under an old case . . . the plaintiff's property must have been *seized* for an action of malicious use of process to lie. *See Mayer v. Walter,* 64 Pa. 283 (1870). There is no allegation that Roberts' property was seized by attachment or otherwise, or even that his license was suspended pending disposition of the charges against him." supra, 214 Pa.Super. at 224, 251 A.2d at 801.[5]

---

**5.** Federal courts applying Pennsylvania law have repeated the state court formulation. *Baird v. Aluminum Seal Co.,* 250 F.2d 595, 600 (3rd Cir., 1958); *Simkins Industries, Inc. v. Fuld & Co., Division of Metropolitan Greetings, Inc.,* 392 F.Supp. 126 (E.D.Pa., 1975) (service of writ of foreign attachment on defendant's obligor sufficient deprivation to satisfy seizure rule); *Jacquard Knitting Machine Co. v. Ordnance Gauge Co.,* 108 F.Supp. 59 (E.D.Pa., 1952) aff'd 213 F.2d 503 (3rd Cir.).

We believe that this long-standing rule of law, reiterated unequivocally and repeatedly by the appellate courts of Pennsylvania, should be retained. In reaching this conclusion, we recall the words of our Supreme Court in the seminal case of *Kramer v. Stock,* supra at 118: "There is probably great difficulty in devising a system on the subject which would be free from inconvenience to one party or the other." The competing interests were aptly articulated by the District of Columbia Court of Appeals in reaffirming its adherence to the seizure requirement: "Some sort of balance has to be struck between the social interests in preventing unconscionable suits and in permitting honest assertion of supposed rights. These interests conflict because a suit which its author thinks honest may look unconscionable to a jury. *Soffos v. Eaton,* 80 U.S.App.D.C. 306, 307, 152 F.2d 682, 683 (1945). The Oregon Supreme Court recently retained the seizure requirement and stated: "[W]e might not in the first instance adopt the rule. . . . But this case is not the first instance, and the rule as we have stated it does make some contribution insofar as it holds a plaintiff to notice of circumstances or procedures that subject a defendant to immediate interference or extraordinary risk of harm. *O'Toole v. Franklin,* supra, 279 Or. at ——, 569 P.2d at 564–565. We agree with this analysis. Accordingly, we hold that the rule of law followed in Pennsylvania for almost 140 years should be retained until such time as the Supreme Court overrules it or the legislature acts to change it. *Hillbrook Apartments, Inc. v. Nyce Crete Co.,* 237 Pa.Super. 565, 352 A.2d 148 (1975); *Crowell Office Equipment v. Krug,* 213 Pa.Super. 261, 247 A.2d 657 (1968); *Commonwealth v. Poundstone,* 200 Pa.Super. 416, 188 A.2d 830 (1963).[6]

**6.** Appellants argue alternatively that they have suffered the kind of interference compensable under Pennsylvania law. This contention lacks merit. The prayer for reimbursement of legal fees must be rejected. Such expenditures are an often unavoidable burden on litigants and cannot be construed as the kind of immediate seizure or interference with the person and property contemplated by Pennsylvania case law. *Publix Drug Co. v. Breyer Ice Cream Co.,* supra. Likewise, injury to reputation and loss of consortium are the kind of

Accordingly, we affirm the order of the lower court granting appellee's demurrer.

Order affirmed.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

. SPAETH, J., agrees that the order of the lower court should be affirmed, but only because in his opinion this court is bound by the Supreme Court's adoption of, and adherence to, the English rule; were the question open for this court's examination, he might be persuaded that this rule should be abandoned in favor of the Restatement Rule.

PRICE, J., joins in SPAETH, J.'s opinion.

secondary consequences which the seizure requirement was designed to make non-compensable. *Muldoon v. Rickey,* supra; *Roberts v. Gibson,* supra. Finally, appellants' argument that the seizure requirement deprives them of their due process rights is patently frivolous. *See O'Toole v. Franklin,* supra, 279 Or. at ——, 569 P.2d at 565.